Filed 8/22/25  P. v. McQueen CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL PAUL McQUEEN, JR.,<br><br>     Defendant and Appellant. | A169527<br><br>(Solano County<br>Super. Ct. No. VCR235809) |

Michael Paul McQueen, Jr. (appellant), appeals from his convictions, following a jury trial, for charges relating to his assault and robbery of victim L.H.  Appellant argues the prosecutor committed misconduct and the trial court made sentencing errors.  We remand for resentencing and otherwise affirm.

BACKGROUND

*Prosecution Case*

L.H. testified that on September 3, 2018, Emily Blase[1] asked him for marijuana she could resell to make money.  L.H. had known Blase for about

---

[1] Blase was charged as a codefendant with appellant.  In a separate proceeding, she was convicted of being an accessory after the fact.

1

20 years and their relationship had at times been sexual, but he had not seen her for more than a year. L.H. knew Blase and appellant had an "on-again/off-again" relationship, and he had met appellant once before. L.H. thought Blase's messages seemed too "eager" and "something felt off." He asked Blase if her "crazy boyfriend" or anyone else would be there, and she assured him that no one else would be there.

About 8:00 p.m., L.H. met Blase in the parking lot of her apartment complex. Blase told L.H. not to leave anything in his car, so he took a bag containing the marijuana and a glass bottle of tequila, as well as a backpack with clothes and other items, and followed Blase into her apartment. After L.H. took a few steps into the apartment, appellant came out of a bedroom or closet and said something like, "[N]ot in my house." Appellant had a pipe wrench and grazed the back of L.H.'s head with it. L.H. grabbed for the wrench and, while he and appellant scuffled, appellant told L.H. to drop his bags and yelled for Blase to stab L.H. L.H. and appellant exited Blase's apartment while continuing to fight. About 10 feet from Blase's apartment, appellant "sliced" L.H.'s hand. L.H. dropped his bags to hold his arm, and appellant grabbed the bags and ran into Blase's apartment. L.H. called 911 and told the dispatcher that when he tried to "sell some weed" to appellant's girlfriend, appellant "ambushed" him, hitting him with a wrench and then cutting him with a "pocket knife."[2]

Dr. Stephen Daane operated on L.H. on September 3, 2018 to repair the two arteries, two nerves, and 12 tendons that had been cut. Dr. Daane performed a second operation a year later. L.H. testified he still experienced pain, twitching, and limited mobility in his hand at the time of trial.

---

[2] A recording of the 911 call was played for the jury.

Dr. Daane testified L.H. said he had been cut by a machete. Dr. Daane opined that the wound was consistent with a large, sharp knife because the cut "went through everything in his wrist down to the bone." Although it was possible the wound was caused by glass, it was "really unlikely" because glass would not have cut "down to the bone and left a crease in the bone."

*Defense Case*

Appellant testified in his own defense. He and Blase had dated "on and off" for 15 years. On September 3, 2018, they had been on a break for three or four days. Blase had appellant's dog, and they agreed appellant could pick up his dog from her apartment on September 3. Appellant called Blase before going over but she did not answer. When he arrived at her place, he did not see her car and assumed she was not home.

When appellant let himself into Blase's apartment, he was shocked to see a man he had never seen before. Seconds later, the man threw a glass bottle at appellant, who ducked. The man charged at appellant and they began fighting near where the bottle had broken. The man began choking appellant, so appellant grabbed a piece of glass and cut the man's hand.

After he cut the man, appellant was able to get away. The glass had also cut appellant's hand. Appellant did not see a doctor, but the next day, his friend Kyle P. helped appellant use superglue to stop the bleeding. Appellant still had a scar from the cut. Appellant did not report the attack to the police because he was scared of law enforcement after officers beat up his father when he was a child.

Kyle P. testified that he was in the process of moving into a new apartment on September 4, 2018. Appellant was supposed to help with the move, but when he arrived, he told Kyle his hand was hurt and he could not

3

help.  Appellant's hand had a "fat, nasty" cut, which Kyle helped him bandage with superglue.

*Verdict and Sentence*

The jury convicted appellant of assault with a deadly weapon (Pen. Code,[3] § 245, subd. (a)(1)), second degree robbery (§ 211), and conspiracy to commit robbery (§ 182, subd. (a)(1)).  The jury found true allegations that appellant personally inflicted great bodily injury as to the assault and robbery counts (§ 12022.7, subd. (a)).

The trial court sentenced appellant to an aggregate term of eight years in prison, which included the upper term of five years on the robbery count.

## DISCUSSION

I.    *Prosecutorial Misconduct*

Appellant argues his trial was tainted by various instances of prosecutorial misconduct, primarily stemming from certain testimony of L.H. We reject the challenge.

" ' "A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.]  In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.]" ' [Citation.]  Even when the misconduct does not attain that level, it may be error under state law, but ' " 'only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.' [Citation.]  When a claim of misconduct is based on the prosecutor's comments before the jury, . . . ' "the question is whether there is a reasonable likelihood that the jury

---

[3] All undesignated statutory references are to the Penal Code.

4

construed or applied any of the complained-of remarks in an objectionable fashion." ' [Citation.]" ' [Citation.] Generally, ' "[t]o preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument." ' [Citation.] A failure to 'object and request an admonition will be excused if doing either would have been futile, or if an admonition would not have cured the harm.' " (*People v. Mendoza* (2016) 62 Cal.4th 856, 905 (*Mendoza*).)

A.    *Additional Background*

Towards the end of L.H.'s direct examination, the prosecutor asked a line of questions about L.H.'s knowledge of appellant prior to September 3, 2018, including the question, "Personally did you and the defendant have any beef with each other?" L.H. answered, "To some degree I guess. He called me and talked a bunch of stuff over the phone more than ten years prior because [Blase] spent the night at my house one night for her safety. I guess her co-worker saw that she had been beaten up and wouldn't let her go home, so she indicated that she trusted me to her co-worker. So I picked her up, let her stay at my house for the night, dropped her off at her car the next morning. And then he called me an hour later with a lot to say."

At that point, defense counsel moved to strike and an unreported sidebar was held. After the sidebar, the court did not rule on the motion to strike. On appeal, appellant does not separately challenge the admission of this testimony, but argues it was hearsay and prejudicial. The People concede that the testimony about statements made by Blase's coworker is inadmissible hearsay.

The following morning, outside of the presence of the jury, the court recounted that defense counsel "had requested a mistrial because . . . [L.H.]

related a conversation with the coconspirator in this case about domestic violence." Defense counsel argued that the prosecutor should have known to admonish L.H. about the potential testimony. Defense counsel further argued the comment was highly prejudicial as "a lot of people are very, very turned off to the idea of domestic violence" and, in particular, one of the jurors had mentioned that she "had been a victim of domestic violence."[4]

The prosecutor represented that he did not know L.H. was going to respond as he did to the question, and that, while the prosecutor "was familiar with a domestic violence incident," he "had no idea that [L.H.] even knew about that." The prosecutor explained that when he "asked the question if [L.H.] had any prior personal issues with [appellant]," he was "under the impression his answer would be no since I had no information to the contrary." Defense counsel clarified that he was "not accusing [the prosecutor] of knowing that [L.H.] was going to say that."

With respect to prejudice, the prosecutor argued the testimony was ambiguous as to who harmed Blase: while the jury could infer it was appellant, L.H. "never said it was [appellant] who did it." Given that there was "no evidence and no allegations the defendant ever committed domestic violence" and that the challenged testimony "lack[ed] any serious details," such as "if there were any injuries, how bad it was, [or] what the context was," the prosecutor argued it was not so prejudicial as to require a mistrial.

The trial court denied the mistrial motion.[5] The court offered to admonish the jury but defense counsel declined, stating, "I don't want

---

[4] During voir dire, one of the jurors stated she was involved in a criminal case as "a domestic violence victim" about nine years earlier.

[5] Appellant does not challenge the trial court's ruling on the mistrial motion.

6

anymore highlighting of that testimony to be done, but I think that bell can't be unrung."

B.      *Prosecutor's Intent*

Appellant's primary challenge—framed in various ways—rests on his assertion that the prosecutor intentionally elicited inadmissible testimony. (See *People v. Trinh* (2014) 59 Cal.4th 216, 248 [" ' "It is, of course, misconduct for a prosecutor to 'intentionally elicit inadmissible testimony.' " ' "].)  We reject the challenge.[6]

Appellant bears the burden of establishing the prosecutor committed wrongdoing by intentionally eliciting inadmissible testimony and dishonestly telling the court he did not do so.  (See Evid. Code, § 520 ["The party claiming that a person is guilty of crime or wrongdoing has the burden of proof on that issue."]; see also Cal. Rules of Prof. Conduct, rule 3.3(a)(1) [lawyers "shall not" "knowingly make a false statement of fact or law to a tribunal" (asterisks omitted)].)  Appellant argues the preliminary hearing transcript establishes that the prosecutor knew his question would elicit the response it did.  At the preliminary hearing, when asked what information he had about appellant prior to September 3, 2018, L.H. testified, "[O]ne of [Blase's] co-workers gave me a call saying that she had been beat up and she told her co-worker I was the person that she trusted to go to for that night and not stay with her co-workers.  So, I picked her up, brought her to my place for the night, dropped her off back at her car the next morning, and --" at which point defense counsel objected.  During cross-examination by Blase's counsel at the preliminary hearing, L.H. testified that the coworker told him appellant was the one who beat up Blase.

---

[6] We need not and do not decide whether appellant is estopped from raising the contention on appeal, as the People argue.

7

Appellant emphasizes that the same prosecutor questioned L.H. at the preliminary hearing and at trial. To be sure, the preliminary hearing testimony demonstrates the prosecutor was aware, at the time of the preliminary hearing, that L.H. had this connection with the alleged domestic violence incident. However, it does not demonstrate the prosecutor *remembered* this testimony at the time of trial, more than a year after the preliminary hearing. Appellant contends it is not credible that the prosecutor forgot, arguing the prosecutor must have reviewed the preliminary hearing transcript before examining L.H. at trial, and noting the record shows the prosecutor had the transcript with him at the mistrial hearing. Appellant's claim that the prosecutor must have reviewed the preliminary hearing transcript is sheer speculation, and " ' "speculation is not evidence." ' " (*People v. Fielder* (2004) 114 Cal.App.4th 1221, 1234.) Moreover, even this speculation is undermined by the fact that defense counsel below was *also* present at the preliminary hearing, yet did not remember that testimony at the time of trial and, apparently, had not reviewed this portion of the preliminary hearing transcript. Had defense counsel done so, he presumably would have raised this point at the mistrial hearing, and would have refrained from expressly denying that he was claiming the prosecutor knew L.H. would respond as he did.[7] Appellant has failed to establish that the prosecutor committed wrongdoing.

Appellant's remaining arguments on this issue are easily disposed of. Appellant points to the prosecutor's representation at the mistrial hearing that he "had no idea" L.H. "was involved with" Blase. Appellant argues this

---

[7] If defense counsel had remembered the testimony or reviewed this portion of the preliminary hearing transcript, the failure to raise this challenge below would clearly constitute forfeiture.

also was an intentional misrepresentation because the prosecutor knew L.H. and Blase had a prior sexual relationship. The statement by the prosecutor is almost certainly a misstatement (or possibly a mistranscription), given that appellant's cross-examination of L.H. the afternoon before the mistrial hearing included several questions about his prior relationship with Blase, many of which the prosecutor objected to. Moreover, defense counsel, who was certainly aware of this prior relationship, did not object to or attempt to correct this statement by the prosecutor. In any event, appellant fails to explain any relevance this statement has to the challenged testimony of L.H., or any other possible prejudicial effect.

Appellant also argues statements in the prosecutor's closing argument indicate the prosecutor intentionally elicited the testimony. Appellant points to statements that he contends "recalled the domestic violence incident in the minds of the jurors." As discussed below, we disagree with this contention. But even if it were an accurate characterization of the argument, it would not demonstrate the prosecutor intended to elicit the testimony during his direct examination.

Because we find appellant fails to establish the prosecutor intentionally elicited inadmissible testimony and lied to the court about it, we reject the claims of prosecutorial misconduct with respect to the prosecutor's examination of L.H., representations at the mistrial hearing, and compliance with the in limine order directing the prosecutor to admonish prosecution witnesses to comply with court rulings.

C.     *Closing Argument*

Appellant also argues the prosecutor committed misconduct during closing arguments. We disagree.

9

1.  *Statements Regarding the Challenged Testimony*

Appellant first argues the prosecutor committed misconduct by referring to inadmissible evidence, highlighting this portion of the prosecutor's rebuttal argument: "We know that the victim had a relationship with Emily Blase, but we know it was more casual, friendly, on-and-off occasionally sexually and nothing too deep.  And we know [appellant] was [an] on-and-off boyfriend of hers for 15 years and had a prior incident where he expressed some sort of jealousy to the victim. . . . [T]he only reasonable explanation in this case is not that the defendant was defending himself.  He attacked the victim when he saw the opportunity and took the opportunity to take the property of the victim.  Substantially more likely he used [Blase] to do this.  Even if you don't feel that's the case, it's obviously [*sic*] he wanted to harm the victim when he got the chance or take advantage of him.  Beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  It would be great if we have everything recorded, if we had a lot of the people to witness these individual crimes.  But unfortunately crime happens behind closed doors too.  That doesn't mean that you can't find that the evidence shows beyond a reasonable doubt when there is corroboration, when there is reliable testimony from the witnesses."

We need not decide whether the claim is forfeited for failure to object below, as the People contend.  As an initial matter, to the extent appellant challenges the prosecutor's statements that "the only reasonable explanation in this case is not that the defendant was defending himself," but that appellant "attacked the victim when he saw the opportunity and took the opportunity to take the property of the victim," and that it was "[s]ubstantially more likely he used [Blase] to do this," we reject the claim.  These statements directly responded to defense counsel's closing argument,

10

which argued there was reasonable doubt as to whether appellant acted in self-defense, and relied on the instruction in CALCRIM No. 224 that "[i]f you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence."

Appellant argues the statement that "crime happens behind closed doors" was a reference to domestic violence because that crime often occurs behind closed doors. "When a claim of misconduct is based on the prosecutor's comments before the jury, . . . ' "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." ' " (*Mendoza*, *supra*, 62 Cal.4th at p. 905.) Both the prosecutor and defense counsel emphasized that the heart of the case was L.H.'s word against appellant's, because there were no other testifying witnesses to the incident. Given this context, and that, other than L.H.'s brief testimony, there was no other evidence or reference to an alleged incident of domestic violence, we find no reasonable likelihood that the jury construed this comment as a reference to domestic violence.

Finally, appellant's challenge to the prosecutor's statements arguing appellant had a motive to want to harm L.H.—that there was "a prior incident where [appellant] expressed some sort of jealousy to the victim" and that appellant "wanted to harm the victim when he got the chance"—is unavailing. The parties dispute whether the portion of L.H.'s testimony referred to by these statements—that appellant called L.H. and "talked a bunch of stuff over the phone" and had "a lot to say"—was admissible or not. We need not decide this issue because the trial court never ruled on appellant's motion to strike and defense counsel did not request an admonishment. Therefore, the trial court did not determine which, if any,

11

portions of the challenged testimony were admissible. "It is . . . misconduct for a prosecutor to make remarks in opening statements or closing arguments that refer to evidence *determined to be inadmissible in a previous ruling of the trial court.*" (*People v. Crew* (2003) 31 Cal.4th 822, 839, italics added.) Appellant has failed to establish misconduct by these remarks.[8]

### 2. *Statements About the Fight*

Appellant separately argues the prosecutor committed misconduct by misstating two facts about the fight. Appellant argues the prosecutor's statement, "We know from the victim's testimony that the defendant attacked him from behind when he was refusing to drop the bag as the defendant told him to," was a misstatement because L.H. testified appellant first attacked him from behind and then told him to drop the bags. Appellant also argues the prosecutor's statement that "the victim testified he was attacked with a knife in the parking lot, not in the apartment," was a misstatement because L.H. testified the knife attack happened between the apartment and the parking lot.

Appellant has forfeited these challenges by failing to object below. His cursory assertion that an admonition could not have cured any error is entirely unpersuasive. In any event, appellant fails to establish prejudice from any misstatement. Neither fact was critical, and the jury was properly

---

[8] To the extent appellant argues that the prosecutor also misstated the evidence because L.H. did not expressly testify appellant exhibited jealousy, we reject the challenge. "Where the alleged misconduct arises from the prosecution's rebuttal argument, '[p]rosecutors may make vigorous arguments and fairly comment on the evidence; they have broad discretion to argue inferences and deductions from the evidence to the jury.'" (*People v. Thomas* (2021) 64 Cal.App.5th 924, 954.) L.H.'s testimony that, the morning after Blase spent the night at L.H.'s house, appellant called L.H. "with a lot to say," gives rise to a reasonable inference that appellant was jealous.

instructed that "Nothing that the attorneys say is evidence. In their opening statements and closing arguments the attorneys discuss the case, but their remarks are not evidence." (See CALCRIM No. 222.) Where "the jury was . . . informed that the arguments of counsel are not evidence (see [citation]; CALCRIM No. 222), . . . we assume it followed this instruction." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1345.)

II.     *Sentencing*

Appellant argues the trial court committed reversible error in imposing the aggravated term on the robbery count based in part on a factor not found true by the jury. We agree.

"[S]ection 1170, subdivision (b) . . . prohibit[s] imposition of an upper term sentence unless aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, 'have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' " (*People v. Lynch* (2024) 16 Cal.5th 730, 742 (*Lynch*).) A defendant "is entitled to a reversal and remand for resentencing unless, after examining the entire cause, including the evidence as to all relevant circumstances [citation], we can conclude that the omission of a jury trial was harmless beyond a reasonable doubt as to *every* aggravating fact the trial court used to justify an upper term sentence." (*Id.* at p. 775.)

In imposing the upper term on the robbery count, the trial court relied on four aggravating factors. Three were found true by the jury, but one was not: that appellant's "criminal acts are increasing." (See Cal. Rules of Court, rule 4.421(b)(2) [aggravating circumstances include "[t]he defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness"].) The People

13

concede the trial court erred by relying on this unproven factor, and further concede the challenge is not forfeited, but argue the error is harmless. We disagree.

The People first argue appellant's criminal history *as set forth in the probation report* demonstrates a jury would have found the factor true beyond a reasonable doubt. Criminal convictions may be proved by certified court records. (Evid. Code, § 452.5; see also Pen. Code, § 1170, subd. (b)(3) ["[T]he court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."].) But "a probation report is not a certified record of conviction." (*People v. Dunn* (2022) 81 Cal.App.5th 394, 401, disapproved on another ground in *Lynch, supra,* 16 Cal.5th at pp. 768–769; accord, *People v. Falcon* (2023) 92 Cal.App.5th 911, 953, disapproved on another ground in *Lynch*, at pp. 768–769.) The record does not establish beyond a reasonable doubt that a jury would have found this factor true.

The People next contend " 'the record "clearly indicate[s]" that the trial court would have reached the same conclusion' " (*Lynch, supra,* 16 Cal.5th at p. 771) had it been aware that it could not rely on the prior convictions factor, relying on the trial court's comments that L.H. had been "horribly injured" and could have died, and that the attack was planned. In *Lynch,* "the trial court found eight circumstances in aggravation and none in mitigation. It emphasized, among other things, that [the defendant] had committed repeated acts of violence; his use of multiple weapons in this case involved great violence, cruelty, viciousness, and callousness; and his criminal record demonstrated a serious danger to society." (*Id.* at p. 777.) However, the Supreme Court found the trial court "did not make the kind of definitive statements that we have found to clearly indicate it would not impose a lesser

14

sentence under any circumstances." (*Ibid.*) The court cited as examples of such definitive statements instances where, "in finding the defendant ' "deserving [of] the ultimate sentence of death," ' [the] trial court observed that the defendant was ' "the worst of the worst," ' that he ' "show[ed] absolutely no remorse" ' and that ' "[i]t's as if he has no soul" ' " (*ibid.*, quoting *People v. Flores* (2020) 9 Cal.5th 371, 432), and "where 'the sentencing court announces that it is aware of forthcoming legislation and then explains how it would exercise its discretion under that legislation' " (*ibid.*, quoting *People v. Salazar* (2023) 15 Cal.5th 416, 431). No comparable statements are present here.

Accordingly, we will remand for resentencing. Appellant raises two additional sentencing challenges, neither of which was raised below. Because we are remanding for resentencing, we need not and do not decide these challenges. (*People v. Acosta* (2018) 29 Cal.App.5th 19, 26 [" '[W]hen part of a sentence is stricken on review, on remand for resentencing "a full resentencing as to all counts is appropriate . . . ." ' "].)

DISPOSITION

The judgment is remanded for resentencing, and otherwise affirmed. Following resentencing, the trial court shall forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation.

SIMONS, J.

We concur.
JACKSON, P. J.
CHOU, J.

(A169527)

15